SECOND BAPTIST CHURCH OF RENO, NEVADA, A
NEVADA CORPORATION, APPELLANT, *v.* MOUNT ZION
BAPTIST CHURCH, A NEVADA CORPORATION, LEROY
W. MOSES, REV. WILLIAM C. WEBB, FLORA D.
HOUSTON, SYLVESTER G. SCOTT, WOODVUL
ROBERSON, CORDELIA TATUM, HOWARD
JONES, FLORENCE BELL, AUTRIE ANDERSON
AND JAMES C. THIGPEN, RESPONDENTS.

No. 5798

March 11, 1970                    466 P.2d 212

*Robert R. Herz,* of Reno, for Appellant.

*Charles L. Kellar,* of Las Vegas, for Respondents.

**OPINION**

By the Court, BATJER, J.:

This case involves a dispute between two factions of the Second Baptist Church of Reno, Nevada, over the control of the church assets and the use of the church name.

In 1965 the church building and real property located at 337 East Eighth Street, Reno, Nevada, was purchased for the sum of $26,000 by the State of Nevada for a highway right-of-way. Faced with the problem of having to find a new place to worship, the congregation, acting through its trustees, started negotiations with the Mount Zion Baptist Church for merger and acquisition of their church property. These negotiations terminated on February 6, 1966, when a schism developed in the congregation of the Second Baptist Church. Part of the congregation stayed with the pastor and worshiped, first at the Mount Zion site and later at the Grace Baptist Church. The other segment withdrew to worship in the Pythian Hall at 419 North Virginia Street in Reno, Nevada.

On April 21, 1966, the appellant commenced this action against the respondents. Innumerable pleadings were filed and various legal maneuvers were pursued by both parties, including a petition for a writ of prohibition to this court to prevent judicial intervention in the church controversy. That petition was denied and this court recognized the judicial power to

determine and protect the property rights of religious associations. Mt. Zion Bapt. Ch. v. Second Bapt. Ch., 83 Nev. 367, 432 P.2d 328 (1967).

After the writ of prohibition was denied the trial court commenced the trial of the case, but recessed at the end of the appellant's (plaintiff's) case to afford the litigants an opportunity to explore the possibility of a settlement. This effort proved fruitless and more legal maneuvers ensued until May 20, 1968, when the judge of the trial court suggested a church election to determine which faction constituted the majority of the congregation.

Both parties concurred in the court's suggestion of a supervised election and they each submitted lists of church members. The lists were amalgamated and all persons on that list were mailed a notice[1] of the election to be held in Department 1 courtroom, Washoe County courthouse, under the auspices of the trial court.

There was reserved to each party litigant the right to challenge a voter's eligibility. The challenged ballot was to be placed in a special envelope and segregated from the unchallenged ballots, and a challenge hearing was scheduled to be held, if necessary, after the election. At the time the membership lists were amalgamated, the appellant requested permission to put all challenged voters under oath and question them about

---

[1]"SECOND BAPTIST CHURCH
Reno, Nevada

NOTICE OF MEETING

PLEASE TAKE NOTICE that, pursuant to an order of the undersigned District Judge of the Second Judicial District Court in and for the County of Washoe, State of Nevada, a meeting of the Second Baptist Church will be held in Department No. 1, Third Floor, Washoe County Court House, Reno, Nevada on Friday evening, June 7, 1968 between the hours of 8:00 p.m. and 10:00 p.m. at which time members of the Second Baptist Church as of February 6, 1966 shall be entitled to vote on the following:

Vote for One

I FAVOR THE CHURCH GROUP AT GRACE ☐
BAPTIST CHURCH, 1265 MONTELLO ST.,
RENO, NEVADA

I FAVOR THE CHURCH GROUP AT PYTHIAN ☐
HALL, 419 NORTH VIRGINIA STREET, RENO,
NEVADA

DATED this 22nd day of May, 1968.

/s/   Grant L. Bowen

GRANT L. BOWEN
District Judge"

their church membership. This request was denied by the trial judge and he indicated that all evidence to support each challenge would be considered at the challenge hearing.

The election was held, as scheduled, on June 7, 1968, and there were numerous challenges made by both sides, so a challenge hearing was held on June 19, 1968. Six of the appellant's challenges were allowed, while all of the respondents' challenges were denied. The ballots were then counted and the respondent faction received thirty-one votes to twenty-eight votes for the appellant faction.

On the basis of the election results the trial court dismissed the appellant's complaint and adjudged that the respondents were not only entitled to the use of the name, Second Baptist Church, Reno, Nevada, but were also entitled to all the church property including the cash on deposit with the court through the interpleader action filed by the First National Bank of Nevada. The trial court further held that the respondents were entitled to prosecute the action previously filed against Angass Polk, and to defend or prosecute any other litigation. Furthermore, the appellant was specifically enjoined from using the name Second Baptist Church of Reno, Nevada.

The appellant filed a motion for a new trial; a motion to amend judgment; a motion for a stay of proceedings to enforce judgment, and a motion for a temporary restraining order. These motions were based principally upon the contention that the trial court erred when it denied the challenge to the votes cast by Charles Carr, Charlene Carr, Norman Shepard and Mrs. Norman Shepard. The motions were denied and this appeal is taken from the final judgment and from the order denying the motions.

The appellant contends that the trial court deprived the appellant of a fair trial and failed to conduct a fair church election when it established the church voting list as of February 6, 1966, instead of June 7, 1968; when it denied the appellant's motion to strike certain names from the voting list; when it refused to allow the appellant to examine voting members under oath; and when it denied the appellant's motion to vacate or quash the election results. The appellant also contends that the trial court committed error when it urged settlement and that respondents' counsel committed misconduct when he advised the court that the appellant had refused to settle. The appellant further contends that the trial court committed error when it awarded to the respondents the church money that had been deposited with the trial court in the separate interpleader action.

Cutting through the maze of pleadings, motions, and hearings, it becomes clear that there is only one basic question. Which faction of the congregation of the Second Baptist Church of Reno, Nevada, constituted the majority on February 6, 1966?

It is conceded by the parties that a court has the authority and power to order and supervise a church election. This position has support from the statutes and decided cases. NRS 86.110(1); Mt. Zion Bapt. Ch. v. Second Bapt. Ch., supra; Providence Baptist Church v. Superior Court, 251 P.2d 10, (Cal. 1952); Burnett v. Banks, 279 P.2d 579 (Cal. 1955).

Furthermore, the parties agree that a Baptist church is congregational in nature and that the will of the church is expressed by a majority vote of its members. First Independent Missionary Baptist Ch. v. McMillan, 153 So.2d 337 (Fla. 1963); Austin v. Mt. Zion Prim. Bapt. Church of West Palm Beach, 165 So.2d 412 (Fla. 1964); Ables v. Garner, 246 S.W.2d 732 (Ark. 1952); Moorman v. Goodman, 157 A.2d 519, 59 N.J. Super. 181 (1960).

Here agreement ends and the appellant attacks the election, its validity, its outcome and the results that flowed from it.

We find that the trial court followed a logical and sensible procedure when it required each side to submit a list of members whom they claimed to be eligible to vote, then amalgamated the lists and allowed challenges at the time the ballots were cast. Each member of the congregation, whose name appeared on the amalgamated list, was eligible to vote, but subject to challenge.

The court wisely refused to consider challenges immediately after the membership voting lists were amalgamated, for at that time there was no way of determining who would be present to vote. The appellant argues that in lieu of an opportunity to question the alleged members at the time their names first appeared on the amalgamated list, they should have been able to put the challenged voter under oath at the polls and question him about his church membership, or at the very least to put the members under oath before the challenge hearing and make the inquiry. Such a procedure would have been cumbersome and fraught with the frailties of a subjective response.

Membership in a church must be determined objectively by the congregation, in the light of its constitution and by-laws, and the subjective statement by an individual expressing his belief about his membership in a church is of almost no evidentiary value. A person could honestly believe, and so testify, that he is a member of a certain congregation and yet the facts might show that he had not met or maintained the necessary requirements to be a member.

Knowledge of the amalgamated list afforded both parties ample time and opportunity to acquire evidence of non-membership or other disqualifications prior to the challenge hearing, which was held some twelve days after the election.

While February 6, 1966 was a date distant in time from election day, June 7, 1968, it was the only date that could have been logically used. That was the day when the schism in the congregation occurred, and that fact is acknowledged by all parties. It would have been desirable to hold the election within a few weeks after the schism, however, the parties engaged in numerous legal maneuvers including an application for a writ of prohibition to this court, and the election was held at a time determined by the trial court to be the most convenient. Neither party objected to the holding of the election. As a matter of fact all parties and their respective attorneys cooperated in the pre-election procedures. We find no abuse of discretion by the trial court.

Neither the trial court nor this court can look to what the individuals whose names appeared on the voting list did after February 6, 1966, but only to their status in the church before that date.

The appellant's contention, that the court supervised election was unfair, is based mostly on the claim that the votes of Charles and Charlene Carr and Mr. and Mrs. Norman Shepard should not have been counted. Apparently the challenges to the Carr's vote was premised upon the fact that they had moved from Reno, Nevada before February 6, 1966, and it could be inferred that they had neither attended church functions nor contributed to its support. There was testimony by Mrs. Clara Fells that the Carrs had been dropped from the church rolls, however, her testimony was refuted by the church minutes and was categorically denied by the church secretary. The appellants urge that the results of the entire election should have

been quashed because one of the respondents' witnesses testified that the Carrs left Reno, Nevada in June 1966 when other evidence was later produced which indicated they had moved in June 1965. The appellant ignores the fact that its witness, Mrs. Fell, testified that they moved in March 1964.

It is our view that this testimony was immaterial. The trial court correctly recognized that nonpayment of dues and nonattendance at church services did not ipso facto terminate membership. According to the by-laws,[2] failure to attend and contribute must be "without reason." Before a member's name could be removed from the rolls, he must be given an opportunity to appear and give his reason for his failure to attend or contribute. There is nothing in the record to indicate that there was any steps taken by the congregation, prior to February 6, 1966, to determine that the Carr's failure to attend and contribute was "without reason," therefore, the Carrs were eligible to vote and the challenges were properly denied.

The trial court probably should have allowed the appellant's challenge of Norman Shepard's vote, because there was evidence in the record before the court, that he had joined another church on January 9, 1966, and that is the best evidence that membership has been voluntarily terminated, however, when the challenge was made, counsel for the appellant advised the trial court that Shepard had joined the other church in December 1966, which would have been after the schism date of February 6, 1966. If the court was misled the appellant must bear the responsibility. In any event this error would not have changed the result of the election. The denial of the challenge of Mrs. Norman Shepard's vote was not strongly pursued by the appellant. The challenge was properly denied. There is no evidence that she stopped attending or supporting the church before February 6, 1966, nor is there any evidence to indicate that she had voluntarily joined another church. Norman Shepard's act of joining another church prior to the schism cannot be imputed to her.

---

[2]"AMENDMENTS TO BY-LAWS OF SECOND BAPTIST CHURCH OF RENO, NEVADA:

Article II, Paragraph 3 shall read:

Any adult member more than sixty (60) days delinquent in paying dues or ninety (90) days delinquent in attendance without a reasonable excuse, will forfeit his or her right to vote or voice an opinion at any meeting. . . ."

The appellant's claim that the election was unfair is further eroded by the fact that the trial court erroneously allowed the appellant's challenge to the vote of Lowell Jones and Lillie Rogers. Those people are in the same relative position as the Carrs. It appears that they may not have attended church services and may not have contributed financially to the church before February 6, 1966, but like the Carrs, there is no evidence of a congregational determination that their failure to attend and contribute was "without reason."

We find the church election held under the auspices of the trial court to be eminently fair in all respects.

The appellant's contention that the trial court erred in urging settlement, and that the respondents' counsel committed misconduct when he advised the trial court that the appellant had refused to settle, is without merit. It is a prerogative of a trial court to suggest a settlement. An examination of the record in this case shows that settlement should have been explored shortly after February 6, 1966, and certainly settlement was a proper object of explanation at the time it was suggested by the trial court. The cases relied upon by the appellant to support its position all involved jury trials, where an entirely different rule prevails. In his role in this settlement effort we find no misconduct on the part of the respondents' counsel.

The appellant's contention that the trial court erred in awarding the church money, which was held by the court, to the respondents, is likewise without merit. Counsel for the appellant stipulated to be bound by the outcome of the election.[3] Appellant can not now extricate itself from the force and effect of that stipulation. Stipulations are of an inestimable value in the administration of justice (Hayes v. State, 252 A.2d 431 (N.H. 1969)), and valid stipulations are controlling and conclusive and both trial and appellate courts are bound to enforce them. Burstein v. United States, 232 F.2d 19 (1956); Foote v. Maryland Casualty Company, 186 A.2d 255 (Pa. 1962);

---

[3]"Mr. Herz (Attorney for Appellant): The second item is that there is an interpleader's suit filed by the First National Bank which named everybody in this suit as defendants because the First National Bank did not know who owned the money, and the money is on deposit in the Union Federal Savings & Loan Association, in a savings account, under the Washoe County Clerk as trustee for the Second Baptist Church.

"I am willing to stipulate with counsel that your decision in this case will be the controlling factor in that case, and direct the money to be disbursed in accordance with your decision, so that we will wind both suits up at the same time."

Pierson v. Allen, 409 S.W.2d 127 (Mo. 1966); Bearman v. Camatsos, 385 S.W.2d 91 (Tenn. 1964); Brookhart v. Haskins, 205 N.E.2d 911 (Ohio 1965). In Garaventa v. Gardella, 63 Nev. 304, 169 P.2d 540 (1946), it was held to be error when the trial judge did not honor the stipulation of the parties where a rule of evidence (the deadman's statute) was waived. (See also, Scott v. Justice's Court of Tahoe Township, 84 Nev. 9, 435 P.2d 747 (1968).)

All other claims and contentions of the appellant are also found to be without merit.

The judgment of the trial court is affirmed in its entirety. Costs connected with this appeal are not allowed.

COLLINS, C. J., ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.