AMERICAN FIRE & SAFETY, INC., a Nevada Corpora-
tion, Appellant, *v.* THE CITY OF NORTH LAS
VEGAS, a Nevada Municipality, Respondent.

No. 22990

March 25, 1993                                        849 P.2d 352

*David A. Stephens,* Las Vegas, for Appellant.

*Richard C. Maurer,* North Las Vegas City Attorney, for
Respondent.

## OPINION

*Per Curiam:*

American Fire & Safety, Inc. ("appellant") appeals from a judgment of the district court denying appellant's claim for a refund of its bid guarantee ("bid bond"), and awarding the City of North Las Vegas ("the city") $14,544 on its counterclaim for breach of contract. We affirm the trial court's decision denying a refund of the bid bond. However, we reverse the $14,544 award of additional damages.

The city solicited closed bids for a job remodeling and installing a fire sprinkler system in the city jail. The city required all bidders to post a bond in the amount of five percent of their bid prices and subject to the following terms:

> CONTRACT AND BONDS: The BIDDER to whom the award is made shall, within 10 days after he has received notice of the acceptance of his bid, enter into a written contract with the OWNER. If the successful BIDDER refuses to execute and deliver to the OWNER the contract and bonds required, he shall forfeit the bid guarantee deposited with his bid.
>
> Simultaneous with his delivery of the executed contract, the CONTRACTOR shall furnish a Performance Bond, a Payment Bond and a Guarantee Bond . . . .

The city's bid documents did not state whether the forfeiture of the bid bond functioned as a penalty or as liquidated damages, nor did the documents state that a bidder's liability could exceed the amount of the bond.

With its bid, appellant submitted a cashier's check for $2,964, which represented five percent of its $59,280 bid. On February 17, 1989, the city notified appellant that the city council had awarded appellant the bid. In March, 1989, appellant demanded

that the city pay $1,778, the premium for the performance bond. The city refused to pay for the bond. Appellant likewise refused to pay for the bond, and therefore the parties were unable to execute a written contract. The city retained appellant's bid bond and awarded the contract to the next lowest bidder, who performed the job for $76,788.

Appellant subsequently brought an action seeking damages for breach of contract, or alternatively for rescission of the bid and restitution of the bid bond. The city counterclaimed for breach of contract and prayed for $17,508 in damages, the difference between appellant's bid and the next lowest bid. After a bench trial, the trial court denied appellant relief and awarded the city $14,544, which represented the difference between the bids offset by the amount of the bid bond which the city had retained.

Appellant claims that the forfeiture of the bid bond served as liquidated damages for failure to enter the written contract. As a general rule, an aggrieved party's damages for breach of contract are limited to the amount specified in a valid liquidated damages clause. 5 Arthur L. Corbin, *Corbin on Contracts* § 1061 (1964). Thus, if the bond forfeiture served as liquidated damages, the trial court should not have awarded the city additional damages of $14,544.

The city contends that the bid bond was not liquidated damages, but rather a penalty.[1] "The principal obligor in a penal bond is often . . . bound by a separate contract to which the bond is merely collateral. The penalty named in the bond does not affect the damages recoverable for breach of that contract." 5 *Corbin on Contracts* § 1056. Thus, if the bid bond were a penalty, the city could recover additional damages for appellant's failure to enter the written contract.

The trial court's interpretation of the bid documents did not depend upon weighing the credibility of conflicting extrinsic

---

[1]As a general rule, penal bonds are enforceable only to the extent that the aggrieved party suffered actual damages. 5 Walter H. E. Jaeger, *Williston on Contracts* § 775A (3d ed. 1961). However, "when a bond is given to a public body as a condition of a privilege," and the bond was required by statute for the purpose of securing the obligor's performance, the public body may collect the entire amount of the bond regardless of its actual damages. *Id.* at § 775B. NRS 332.105 authorizes government bodies to require bid bonds from contractors for the purpose of insuring performance. Therefore, if the city had elected to designate in its bid documents that the bid bond was a penalty, the penalty provision would have been enforceable.

evidence. Thus, this court may review the bid documents *de novo:*

> It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, "An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence, where there is no conflict in the evidence or a determination has been made upon incompetent evidence."

Parsons v. Bristol Dev. Co., 402 P.2d 839, 842 (Cal. 1965) (quoting Estate of Platt, 131 P.2d 825, 830 (Cal. 1942)) (citations omitted); *see also* Mullis v. Nevada National Bank, 98 Nev. 510, 513, 654 P.2d 533, 536 (1982). The fact that the city is a government body does not entitle it to any special preference in our construction of the contract. Priebe & Sons v. United States, 332 U.S. 407, 411 (1947) ("It is customary, where Congress has not adopted a different standard, to apply to the construction of government contracts the principles of general contract law."); *see* Cooke v. United States, 91 U.S. 389, 398 (1875) ("If [a government] comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there."); R. Zoppo Co. v. Commonwealth, 232 N.E.2d 346, 349 (Mass. 1967); Bache Halsey Stuart v. University of Houston, 638 S.W.2d 920, 931 (Tex.Ct.App. 1982); Holtzendorff v. Housing Auth. of City of Los Angeles, 58 Cal.Rptr. 886, 893 (Cal.Ct.App. 1967). Forfeiture provisions are strictly construed. 4 Walter H. E. Jaeger, *Williston on Contracts* § 602A (3d ed. 1961). Forfeitures are disfavored by courts and "should be found only in language which is plain and clear, whose unequivocal character may render its exercise fair and rightful." *Id.* (citations omitted). Finally, we note that the city was responsible for drafting the bid documents, and that the bid documents should be "construed most strongly against the authoring party." *Mullis,* 98 Nev. at 513, 654 P.2d at 535 (citing Estwin Corp. v. Prescription Ctr. Pharmacy, 93 Nev. 251, 563 P.2d 78 (1977)).

Under some circumstances, it is a close question whether a contract provision constitutes a penalty or liquidated damages. In general,

> [a] penalty is a sum named, which is disproportionate to the damage which could have been anticipated from breach of the contract, and which is agreed upon in order to enforce performance of the main purpose of the contract by the compulsion of this very disproportion. It is held *in terrorem* over the promisor to deter him from breaking his promise.

5 *Williston on Contracts* § 776. Thus, the purpose of executing a penal bond "is to give security that the 'condition' of the bond will be performed." 5 *Corbin on Contracts* § 1056. In contrast, liquidated damages are "a sum fixed as an estimate made by the parties at the time when the contract is entered into, of the extent of the injury which a breach of the contract will cause." 5 *Williston on Contracts* § 776.

The distinction between liquidated damages and penalties may sometimes blur.[2] The difficulty of characterizing bid bonds can be illustrated by reference to the statutes of other jurisdictions. The Wisconsin legislature has explicitly characterized the forfeiture of a bid bond as liquidated damages. WIS. STAT. ANN. § 62.15(3) (West 1988). Prior to 1990, the Arizona legislature had characterized the forfeiture of a bid bond as liquidated damages, but now characterize it as a penalty. ARIZ. REV. STAT. ANN. § 34-201(A)(3) (1990), *amended by* ARIZ. REV. STAT. ANN. § 34-201(A)(3) (Supp. 1992). The Ohio legislature also characterizes the forfeiture of bid bonds as a penalty.[3] OHIO REV. CODE ANN. § 153.54 (Anderson Supp. 1991). This diversity among jurisdictions suggests that the character of a bid bond is generally ambiguous because it may operate as a penalty to compel performance or as compensation for the contractor's failure to execute a formal contract, or, more likely, it may operate simultaneously in both roles.

The Nevada legislature has not expressly characterized bid bonds as either liquidated damages or penalties. In fact, NRS 332.115(2) authorizes governing bodies to require bid bonds "to insure proper performance of the contract," a penal function, "and . . . indemnify . . . the local government against all . . . damages," a purpose associated with liquidated damages. We conclude that NRS 332.115(2) gives local government broad

---

[2]*Williston* provides two such examples:

> When liquidated damages of $10 a day are stipulated for if a building is not completed on time, or payment of $5,000 if a promisor fails to comply with his promise not to enter into competition with the promisee, there can be no doubt that these provisions are intended not merely as a provision for an unfortunate and unexpected contingency but also to secure the promisee in the performance of the main obligation and to make the promisor more reluctant to break it. This distinction [between liquidated damages and penalties], therefore, is at least partially fictitious.

5 *Williston on Contracts* § 778.

[3]Although the Ohio legislature has characterized the forfeiture of a bid bond as a penalty, it has also limited the liability of a contractor to the amount of the bid bond. OHIO REV. CODE ANN. § 153.54 (Anderson Supp. 1991).

latitude in drafting its bid documents to define the purpose and consequences of a bid bond requirement.

In the instant case, the city's finance director testified that the purpose of the bid bond was to assure that appellant would execute the written contract. Thus, the city intended to use the bid bond as a penalty. However, the city failed to demonstrate how the bid documents conveyed this penal function to appellant. By fixing the amount of the bond at five percent of a contractor's bid, the city established a rough proportionality between the amount of the bond and the city's potential damages in resorting to the next highest bidder. This proportionality is more consistent with an attempt to liquidate damages than to impose a penalty. The moderate amount of the bond certainly would not engender in contractors the kind of compulsion *in terrorem* which is normally associated with a penalty. Although the city may have intended the bid bond to serve as a penalty, the bid documents do not manifest that intent, nor do they indicate that appellant may be liable for damages in excess of the bond.

Thus, the city's bid documents failed to resolve the ambiguity inherent in the requirement of a bid bond. To resolve the ambiguity, this court relies on established principles of interpretation. These principles dictate that we construe an ambiguous contract provision against penalties and forfeitures, and against the drafter of the ambiguous provision. Therefore, we conclude that the provision requiring a bid bond functioned as liquidated damages. A contractor in appellant's position could reasonably understand the bid bond provision to limit his liability to the amount of the bond.

The trial court erred by awarding damages in excess of the liquidated damages provision. We have considered appellant's other assignments of error and conclude that they lack merit. Accordingly, we affirm the trial court's judgment denying appellant a refund of the bond, and we reverse the trial court's award of additional damages.