*845
 
 OPINION
 

 Per Curiam:
 

 The crime underlying this appeal was previously considered by this court in Doleman v. State, 107 Nev. 409, 812 P.2d 1287 (1991). Appellant Marvin Lewis Doleman, aka Marvin Louis Doleman, (“Doleman”) was charged with murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, and two counts of robbery with the use of a deadly weapon. A jury found Doleman guilty of each charge. Doleman was sentenced to death for the murder conviction and 100 years in prison for the other charges. After this court upheld Doleman’s conviction and sentence, Doleman filed a petition for post-conviction relief. After an evidentiary hearing, the district court denied Doleman’s petition, ruling that Doleman received effective assistance of counsel during his trial and his direct appeal.
 

 In this appeal, Doleman claims that the district court’s ruling was erroneous because his trial counsel failed to (1) call certain witnesses during the penalty phase of the trial, (2) object to the malice instruction given to the jury, and (3) object to instructions regarding the jury’s consideration of mitigating circumstances in its death eligibility decision.
 

 
 *846
 
 Based on the reasoning in this opinion, we conclude that the failure of Doleman’s trial counsel to reasonably investigate the potential testimony of certain witnesses at Doleman’s penalty hearing constituted ineffective assistance of counsel. Therefore, it is not necessary to review Doleman’s other contentions in this opinion. Accordingly, we reverse Doleman’s death sentence and remand this case for a second penalty hearing.
 

 FACTS
 

 In early 1990, two cab drivers were shot in the head by two young men in Las Vegas. On January 9, 1990, the first cab driver was shot three times but survived. On January 19, 1990, the second cab driver was shot twice and died the following day. Based on information received from an informant and obtained during a search, the police arrested Doleman and Frederick Payne (“Payne”) for the shootings.
 

 The trial testimony of the first cab driver and an eye-witness to that shooting revealed that when the shooting occurred, Payne and another man were seated in the back seat of the cab. No definitive evidence was introduced to show which individual actually shot the first cab driver. As to the second shooting, trial testimony showed that when the shooting occurred, Doleman was knocking on a second floor motel room door. The woman in the motel room did not answer Doleman’s knocks because she did not recognize him. She later saw another young man, presumably Payne, standing next to a cab and yelling to Doleman. Doleman and the other man ran from the scene. The second cab driver was later found wounded in his cab at that motel.
 

 Based on these facts, the prosecution’s theory at trial was that Doleman aided and abetted Payne in the perpetration of the two shootings. Doleman’s defense theory was that he was not involved in either shooting, but was a mere spectator. The jury found Doleman guilty of all counts for which he was charged. On May 10, 1990, a penalty hearing was conducted to sentence Doleman. During the hearing, the State called five witnesses and Doleman called one witness, his former girlfriend. Following the hearing, the jury returned a verdict of death.
 

 This court upheld Doleman’s conviction and sentence. Doleman then filed a petition for post-conviction relief. Doleman argued that he received ineffective assistance from counsel during his trial. Doleman alleged that trial counsel failed to call witnesses during the penalty phase of the trial who would have provided mitigating circumstances that the jury should have considered in its death eligibility decision. Also, Doleman argued that trial counsel failed to object to the malice instruction during the guilt phase of the trial. Further, Doleman argued that trial
 
 *847
 
 counsel failed to object to the jury instruction regarding the consideration of mitigating circumstances during the penalty phase of the trial.
 

 In July 1994, the district court conducted a post-conviction evidentiary hearing. Doleman called six witnesses: his trial counsel, his appellate counsel on direct appeal, two teachers from a school which he attended, his mother, and his oldest sister. The State called the investigator who was hired by Doleman’s trial counsel to locate evidence for Doleman’s defense.
 

 The district court concluded that trial counsel’s trial preparation did not fall below the objective standard of reasonableness. The district court classified the decisions made by Doleman’s trial counsel during Doleman’s penalty hearing as tactical decisions that are virtually unassailable. Specifically, the district court concluded that trial counsel’s decision not to present witness testimony from Doleman’s teachers or Doleman’s family members was reasonable. According to the district court, the teachers could not contradict testimony from the murder victim’s girlfriend that the wristwatch found in Doleman’s possessions belonged to that victim. As to the family members, the district court noted that Doleman was unaware of the location of those family members at the time of trial and those family members had minimal contact with Doleman during his formative years.
 

 Also, the district court ruled that trial counsel’s failure to raise an objection to the malice instruction was a reasonable tactical decision. Further, the district court concluded that nothing in the trial record indicated that the jury was confused about how mitigating circumstances should be considered.
 

 DISCUSSION
 

 This court has adopted the “reasonably effective assistance” standard to govern ineffective assistance of counsel cases. Warden v. Lyons, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984). The “reasonably effective assistance” standard was articulated in Strickland v. Washington, 466 U.S. 668 (1984), and described by this court in State v. Love, 109 Nev. 1136, 865 P.2d 322 (1993). In
 
 Love,
 
 this court stated:
 

 Under this two-prong test, a defendant who challenges the adequacy of his or her counsel’s representation must show (1) that counsel’s performance was deficient and (2) that the defendant was prejudiced by this deficiency.
 

 “Deficient” assistance requires a showing that trial counsel’s representation of the defendant fell below an objective standard of reasonableness. If the defendant establishes that counsel’s performance was deficient, the defendant must
 
 *848
 
 next show that, but for counsel’s errors, the result of the trial probably would have been different.
 

 Id.
 
 at 1138, 865 P.2d at 323 (citing
 
 Strickland,
 
 466 U.S. at 687-94).
 

 In order to satisfy the objective standard of reasonableness, trial counsel must make a sufficient inquiry into the information that is pertinent to his client’s case.
 
 Strickland,
 
 466 U.S. at 690-91. Once a reasonable inquiry is made, counsel should make a reasonable strategy decision on how to proceed with his client’s defense.
 
 Id.
 
 A strategy decision, such as who should be called as a witness, is a tactical decision that is “virtually unchallengeable absent extraordinary circumstances.” Howard v. State, 106 Nev. 713, 722, 800 P.2d 175, 180 (1990) (citing
 
 Strickland,
 
 466 U.S. at 691); State v. Meeker, 693 P.2d 911, 917 (Ariz. 1984).
 

 Testimony of Doleman’s family members
 

 At the post-conviction evidentiary hearing, Doleman’s mother and sister stated that they could have testified during Doleman’s penalty hearing, but that they were never contacted by trial counsel. Doleman’s mother would have told the jury that during Doleman’s childhood, she was a prostitute and drug addict, Doleman was physically abused, and Doleman was often abandoned. Also, Doleman’s mother would have described the series of foster homes and reform schools that Doleman attended from the age of four. Doleman’s sister was prepared to give similar testimony.
 

 We conclude that trial counsel’s failure to contact and present Doleman’s mother and sister as witnesses at Doleman’s penalty hearing constituted ineffective assistance of counsel. According to Doleman’s mother, she did not have a phone, and Doleman did not know where she or his sister were before his trial. However, Doleman’s sister had a telephone and knew how to locate Doleman’s mother. We conclude that a reasonable investigation by Doleman’s trial counsel could have located Doleman’s sister and mother. Without taking reasonable steps to investigate Doleman’s family, Doleman’s trial counsel could not discover whether their testimony would benefit his client. Without that knowledge, we conclude that trial counsel could not make a reasonable tactical decision whether Doleman’s family members should testify at the penalty hearing.
 
 See Strickland,
 
 466 U.S. at 691-92.
 

 Further, we conclude that the failure of trial counsel to intro
 
 *849
 
 duce Doleman's family members as witnesses at the penalty hearing prejudiced Doleman. While evidence of Doleman's turbulent childhood was presented through his Boy's Town records, we cannot underestimate the impact that live testimony from Doleman's family members could have had on the jury. The knowledge that Doleman's family had regarding Doleman's difficult childhood and multiple foster homes could have effectively humanized Doleman in the eyes of the jury. Further, considering Doleman's role as an aider and abetter in the murders underlying this case, testimony from Doleman's family could have influenced the jury's death eligibility decision. See Love, 109 Nev. at 1140, 865 P.2d at 324.
 

 Testimony of Boy `s Town employees
 

 According to trial counsel, Boy's Town, the high school attended by Doleman, was contacted in preparation for Doleman's trial to locate witnesses who could verify whether a Seiko watch found in Doleman's possessions was a gift from Boy's Town. The Seiko watch had been identified by the second victim's girlfriend as the watch she gave to that victim as a gift. Trial counsel also attempted to contact individuals who could give positive testimony regarding Doleman. However, trial counsel testified at the post-conviction evidentiary hearing that the individuals he spoke with were familiar with other crimes that Doleman committed with Payne and could testify at Doleman's penalty hearing only with the permission of Boy's Town. Based on these conversations, Doleman's trial counsel concluded that any Boy's Town employee would be difficult to procure as a witness or would be potentially dangerous as a witness.
 

 At the post-conviction evidentiary hearing, Doleman elicited testimony from teachers at Boy's Town. Janet Horan, Doleman's instructor at Boy's Town, testified that she remembered that Doleman excelled at athletics, was an extremely good role model, and received the highest award given to students at Boy's Town. Eugene Horan, Doleman's coach at Boy's Town, testified that Doleman was a leader and could have been the "mayor" of Boy's Town had he been encouraged to do so. Both of the Horans testified that they would have testified at the penalty phase of Doleman's trial if Boy's Town allowed them to, but they were never contacted by trial counsel. Also, Doleman presented evidence that four other teachers at Boy's Town would have testified that Doleman displayed good character while enrolled at Boy's Town.
 

 We conclude that trial counsel did not reasonably investigate the potential testimony from witnesses at Boy's Town. At the
 
 *850
 
 post-conviction hearing, trial counsel could not remember with whom he talked at Boy's Town. He apparently failed to locate the Horans or the other four witnesses who were located in preparation for the post-conviction hearing. Without locating many of the people at Boy's Town who knew Doleman, trial counsel could not make a reasonable decision about whether their testimony would be beneficial. Further, if the Boy's Town employees would have been difficult to procure as witnesses for the penalty hearing, trial counsel could have required their presence through subpoenas. See Strickland, 466 U.S. at 691-92.
 

 Further, we conclude that the failure to introduce the testimony from the Horans and other Boy's Town employees prejudiced Doleman. The testimony would have illustrated that Doleman flourished in structured environments and was able to adhere to institutional rules. Also, the testimony may have displayed that Doleman can be easily influenced by others, thereby explaining his role as an aider and abetter in the cab driver shooting. Further, the introduction of the records from Boy's Town did not sufficiently convey to the jury what live witnesses who knew Doleman could have conveyed. See Love, 109 Nev. at 1140, 865 P.2d at 324.
 

 Jury `s consideration of mitigating circumstances
 

 Based upon our conclusion that a second penalty hearing is merited in this case, we need not address this issue in this opinion. However, it is clear from the precedent of the United States Supreme Court that a jury's finding of mitigating circumstances in a capital penalty hearing does not have to be unanimous. See Mills v. Maryland, 486 U.S. 367, 374-82 (1988). Further, this issue was recently raised and considered in Jimenez v. State, 112 Nev. 610, 918 P.2d 687 (1996). Accordingly, we conclude that Doleman's contention is without merit.
 

 CONCLUSION
 

 We conclude that trial counsel's failure to present certain witnesses during Doleman's penalty hearing constituted ineffective assistance of counsel. Accordingly, Doleman's death sentence is reversed, and this case is remanded to the district court for a second penalty hearing.