*1090 OPINION
By the Court,
Hardesty, J.:
This is an appeal from an order of the district court denying a post-conviction petition for a writ of habeas corpus in a death penalty case. Appellant Michael Rippo invokes this court’s holding in McConnell v. State that “it [is] impermissible under the United States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder is predicated.”[1] This court has concluded in Bejarano v. State[2] that McConnell’s holding is retroactive; we therefore apply it here. Three of the aggravating circumstances found by the jury in this case were invalid under McConnell, but three valid aggravated remain. We conclude that the jury’s consideration of the invalid aggravating circumstances was harmless beyond a reasonable doubt and therefore affirm.

FACTS

On February 18, 1992, Rippo and Diana Hunt robbed and killed Denise Lizzi and Lauri Jacobson. Rippo and Hunt went to Jacobson’s apartment where Hunt knocked Jacobson to the floor with a beer bottle and Rippo used a stun gun to subdue both Jacobson and Lizzi. Rippo then bound and gagged the women, dragged them to a closet, and strangled them. He took Lizzi’s car and credit cards and later used the credit cards to make several purchases. The medical examiner testified that both women died of asphyxiation and that their injuries were consistent with manual and ligature strangulation.[3]
Under a plea agreement with the State, Hunt pleaded guilty to robbery and testified against Rippo. The State presented two theories of first-degree murder: the murder was premeditated and deliberate, and the murder was committed during the commission of a felony. The jury found Rippo guilty of two counts of first-degree murder and one count each of robbery and unauthorized use of a credit card.
In the penalty phase, the State presented evidence that Rippo was convicted of committing a violent sexual assault in 1982 as well as juvenile burglaries. The State also presented testimony by five relatives of the two murder victims. The defense called three witnesses to testify on Rippo’s behalf: a prison vocational instruc *1091 tor and minister, Rippo’s stepfather, and Rippo’s sister. Defense counsel also read a letter from Rippo’s mother to the jury. The jury found that six circumstances aggravated the murder: it was committed by a person under a sentence of imprisonment, it was committed by a person previously convicted of a felony involving the use or threat of violence, it was committed during a burglary, it was committed during a kidnapping, it was committed during a robbery, and it involved torture. The jury further found that the aggravators outweighed any mitigating circumstances and returned verdicts of death for the two murders.
This court affirmed Rippo’s judgment of conviction and sentence.[4] Rippo filed a timely petition for a writ of habeas corpus in the district court. After conducting an evidentiary hearing, the district court denied Rippo’s petition in December 2004.

DISCUSSION

1. Invalid aggravating circumstances under McConnell
Citing McConnell,[5] Rippo contends that the State impermissibly based three aggravating circumstances in the penalty phase on felonies used to support the felony-murder charge in the guilt phase. Because the district court had already denied Rippo’s habeas petition when this court issued its decision in McConnell, he first raised this issue in this appeal. However, after supplemental briefing on the matter, we conclude, and the State agrees, that the issue is appropriate for our resolution on appeal. First, Rippo has good cause for raising his McConnell claim now because its legal basis was not available at the time he pursued his habeas petition in the district court.[6] Second, the McConnell issue presents questions of law that do not require factual determinations outside the record. The State concedes that no purpose would be served by requiring Rippo to file a successive petition invoking McConnell in order to decide his claim.
We held in McConnell that in any case where the State seeks a death sentence and “bases a first-degree murder conviction in whole or part on felony murder,” an aggravating circumstance cannot be based on the felony murder’s predicate felony.[7] Absent a verdict form “showing that the jury did not rely on felony murder to find first-degree murder, the State cannot use aggrava-tors based on felonies which could support the felony murder.”[8] *1092 This court has concluded that the new rule set forth in McConnell is substantive and retroactive.[9] We will therefore apply it here.
We address first the State’s argument that the theory of felony murder in this case can be disregarded under McConnell because there is “ample evidence” that Rippo committed premeditated murder. This approach has no basis in McConnell. The holding and rationale in McConnell do not involve determining the adequacy of the evidence of deliberation and premeditation; rather, they are concerned with whether any juror could have relied on a theory of felony murder in finding a defendant guilty of first-degree murder. We did conclude that McConnell’s own conviction for first-degree murder was “soundly based on a theory of deliberate, premeditated murder,” leaving the felony-murder theory without consequence.[10] That conclusion, however, is effectively limited to the facts of McConnell. First, McConnell pleaded guilty, so a jury did not determine his guilt. Second, McConnell expressly testified that he had premeditated the murder. Third, “[hjis other testimony and the evidence as a whole overwhelmingly supported this admission.”[11] Thus, in McConnell there was no chance that a finding of guilt, particularly a jury verdict, depended even partly on a theory of felony murder.
McConnell applies here because the district court instructed the jury that Rippo was accused of two counts of murder for killing the victims “willfully, feloniously, without authority of law, with malice aforethought and premeditation and/or during the course of committing Robbery and/or Kidnapping and/or Burglary.” (Emphasis added.) The verdict form did not indicate whether the jury found first-degree murder based on premeditated murder, felony murder, or both. In the penalty phase, the jury found three felony aggravators based on robbery, kidnapping, and burglary— the felonies that underlay the State’s felony-murder theory. These three aggravators therefore must be struck.
This court can still uphold Rippo’s death sentence by reweighing the aggravating and mitigating circumstances if we are convinced that the effect of the invalid aggravating circumstances was harmless beyond a reasonable doubt.[12]
*1093 The State cites Brown v. Sanders,[13] a recent Supreme Court decision, in support of its argument that the jury’s consideration of the invalidated felony aggravators was harmless error. In Brown, the Court concluded that an invalidated sentencing factor causes constitutional error “only where the jury could not have given aggravating weight to the same facts and circumstances under the rubric of some other, valid sentencing factor.”[14] The State argues that the error here was harmless because the jury was permitted to consider the evidence relevant to the invalid felony aggravators as “other matter” evidence under Nevada’s capital sentencing scheme. This argument fails to take into account that a Nevada jury may consider “other matter” evidence only after it has decided whether a defendant is eligible for the death penalty.[15] The consideration of invalid factors before that point skews the eligibility decision, even if those factors would be relevant in deciding subsequently whether a death-eligible defendant actually should receive a death sentence. The primary focus of our analysis, therefore, is on the effect of the invalid aggravators on the jury’s eligibility decision, i.e., whether we can conclude beyond a reasonable doubt that the jurors would have found that the mitigating circumstances did not outweigh the aggravating circumstances even if they had considered only the three valid aggravating circumstances rather than six.
The three invalid felony aggravators all involved the circumstances of the murder itself, so striking them eliminates the weight of roughly one major aggravator.[16] Three aggravators found by the jury remain valid: the murder was committed by a person under a sentence of imprisonment, it was committed by a person previously convicted of a felony involving the use or threat of violence, and it involved torture. The bulk of the case in aggravation therefore remains intact.
A review of the record reveals that the mitigating evidence presented on Rippo’s behalf was not weighty. Rippo’s counsel called three witnesses. James Cooper testified that he was employed by the Department of Prisons as a vocational education instructor and ran a prison ministry. He supervised Rippo’s work and was his minister. Cooper was unaware of Rippo having ever caused a prob *1094 lem and believed that Rippo was an asset in the prison and would work and stay out of trouble. Next, Rippo’s stepfather Robert Duncan testified that Rippo had not received the help he needed while previously incarcerated and was released without being placed in any transitional facility. Mr. Duncan testified that Rippo was likeable and the two had a good relationship. Rippo’s sister Stacie Roterdan in turn testified that their stepfather (before Mr. Duncan) had been hard on Rippo and that Rippo did not get a fair chance when he was 15 years old.
Trial counsel also read two letters to the jury. The first letter was from a doctor and concerned the poor health of Rippo’s mother Carol Duncan, which made it impossible for her to testify at trial. The second letter was from Mrs. Duncan. She stated that Rippo’s biological father left her when Rippo was five years old. She described Rippo as an outgoing and carefree spirit who treated his sisters in a tender fashion and loved animals. After Rippo turned 15, he began arguing with his stepfather, a professional gambler, and ran away from home. After he was convicted of burglary, his mother had him placed in the Spring Mountain Youth Camp. While he was in the camp, his stepfather was diagnosed with cancer. After about four months, Rippo returned home, but his family was absorbed with his stepfather’s terminal illness, and Rippo’s relations with his mother and family deteriorated. After Mrs. Duncan hinted that Rippo might be sent back to Spring Mountain, she did not see her son again until he was arrested for sexual assault. While Rippo was incarcerated, he earned a GED, completed an electronics course, obtained a PELL grant, taught himself a foreign language, and was employed by the corrections system. When he came home from prison, he had a job in construction and a nice girlfriend.
This evidence in mitigation was not particularly compelling. We conclude beyond a reasonable doubt that the jurors would have found that the mitigating circumstances did not outweigh the three valid aggravating circumstances and, after consideration of the evidence as a whole, would have returned a sentence of death.
This conclusion is not changed by the fact that one jury instruction included an incorrect implication regarding the consideration of mitigating circumstances. The last paragraph of Instruction No. 7 provided:
A mitigating circumstance itself need not be agreed to unanimously; that is, any one juror can find a mitigating circumstance without the agreement of any other jurors. The entire jury must agree unanimously, however, as to whether the aggravating circumstances outweigh the mitigating circum *1095 stances or whether the mitigating circumstances outweigh the aggravating circumstances.
(Emphases added.) The final sentence of this instruction should have read simply: ‘ ‘The entire jury must agree unanimously as to whether the aggravating circumstances outweigh the mitigating circumstances.” The emphasized language implied that jurors had to agree unanimously that mitigating circumstances outweigh aggravating circumstances, when actually “a jury’s finding of mitigating circumstances in a capital penalty hearing does not have to be unanimous.”[17]
However, despite the inaccurate wording at the end of the instruction, the instruction clearly and properly stated that each individual juror could find mitigating circumstances without the agreement of any other jurors and further provided that the jurors had to be unanimous in finding that the aggravating circumstances outweighed the mitigating circumstances.[18] It is extremely unlikely that jurors were misled to believe that they could not give effect to a mitigating circumstance without the unanimous agreement of the other jurors. We conclude that the error was harmless beyond a reasonable doubt.
2. Claims of ineffective assistance of counsel
Rippo also claims that his trial and appellate counsel provided ineffective assistance in a variety of ways. We conclude that none of Rippo’s arguments in this regard has merit. We briefly discuss those worthy of comment below.
Claims of ineffective assistance of trial or appellate counsel are properly raised for the first time in a timely first post-conviction petition.[19] A claim of ineffective assistance of counsel presents a mixed question of law and fact that is subject to independent review.[20] To establish ineffective assistance of counsel, a petitioner must demonstrate that counsel’s performance was deficient and that the deficient performance was prejudicial.[21] To demonstrate preju *1096 dice, the petitioner must show that but for trial counsel’s mistakes there is a reasonable probability that the result of the trial would have been different.[22] “To establish prejudice based on the deficient assistance of appellate counsel, the defendant must show that the omitted issue would have a reasonable probability of success on appeal.”[23] Judicial review of a lawyer’s representation is highly deferential, and a claimant must overcome the presumption that a challenged action might be considered sound strategy.[24]
Rippo alleges that his trial counsel were ineffective for insisting that he waive his right to a speedy trial and then allowing his case to languish for 46 months. Because of the delay, he asserts, jailhouse informants learned about his case and were able to fabricate the testimony used by the State. However, he does not support this claim with specific factual allegations, references to the record, or any citation to relevant authority. Nor does he describe the informant testimony or explain how it was prejudicial. Accordingly, Rippo has failed to demonstrate that the district court erred in denying this claim.
Rippo claims that trial counsel were ineffective because they failed to object to the State’s use of a prison photograph of him. He argues that the photo was irrelevant and unduly prejudicial and constituted evidence of other bad acts. Rippo does not support this claim with references to the record, and the trial transcript shows that his counsel unsuccessfully objected to the admission of the photo. Accordingly, Rippo has failed to demonstrate that the district court erred in denying this claim.
Rippo maintains that his appellate counsel was ineffective for not raising claims of ineffective assistance of trial counsel. However, this court declines to address such claims on direct appeal unless the district court has held an evidentiary hearing on the question or an evidentiary hearing would be unnecessary.[25] Neither was the case here. Accordingly, Rippo has not demonstrated that appellate counsel was deficient. The district court did not err in denying this claim.
Rippo claims that appellate counsel was ineffective for not appealing on grounds that the jury instruction defining premedita *1097 tion and deliberation was unconstitutional. This claim was not preserved for review by this court on direct appeal, so counsel would have had to show that any error was plain and affected Rippo’s substantial rights.[26] Rippo contends his counsel should have challenged “the Kazalyn instruction” that this court abandoned in 2000 in Byford v. State.[27] But Byford is not retroactive, and use of the Kazalyn instruction in a case predating Byford is no ground for relief.[28] Rippo has failed to demonstrate any deficient performance by counsel. The district court did not err in denying this claim.
Rippo claims that appellate counsel was ineffective for not appealing on grounds that the jury did not adequately reflect Clark County’s African-American population and so failed to represent a fair cross section of the community. Nothing in the record shows that this claim was properly preserved for appeal.[29] Nor has Rippo shown a reasonable probability that the claim would have succeeded on direct appeal. He failed to establish a prima facie violation of the fair cross-section requirement.[30] To demonstrate a prima facie violation, he must show: the group allegedly excluded is a distinctive group in the community; the representation of this group in jury venires is not fair and reasonable in relation to the number of such persons in the community; and this underrepre-sentation results from systematic exclusion of the group in the jury-selection process.[31] Rippo did not satisfy this three-part test. Although African Americans are a distinctive group, Rippo did not present any evidence that the representation of African Americans in venires is unfair and unreasonable in relation to their numbers in the community, nor did he present evidence that any under-representation resulted from their systematic exclusion.[32] Accord *1098 ingly, he has not shown that appellate counsel was deficient and that the district court erred in denying this claim.

CONCLUSION

Three of the aggravating circumstances found by the jury in this case were invalid because they were based on felonies which were used to support the prosecution’s theory of felony murder, and a portion of the jury instruction discussing mitigating circumstances was incorrect. Three aggravators found by the jury remain valid, and we conclude that the jury’s consideration of the invalid aggravating circumstances and the erroneous instruction were harmless beyond a reasonable doubt. We therefore affirm the district court’s order denying post-conviction habeas relief.
Parraguirre, J., concurs.

 120 Nev. 1043, 1069, 102 P.3d 606, 624 (2004).

 122 Nev. 1066, 146 P.3d 265 (2006).

 See Rippo v. State, 113 Nev. 1239, 1244-46, 946 P.2d 1017, 1021-22 (1997).

 Id. at 1265, 946 P.2d at 1033.

 120 Nev. 1043, 102 P.3d 606.

 See Clem v. State, 119 Nev. 615, 621, 81 P.3d 521, 525-26 (2003).

 120 Nev. at 1069, 102 P.3d at 624.

 Id.

 Bejarano, 122 Nev. at 1079, 146 P.3d at 274.

 McConnell, 120 Nev. at 1062, 102 P.3d at 620.

 Id.

 State v. Haberstroh, 119 Nev. 173, 183, 69 P.3d 676, 682-83 (2003).

 546 U.S. 212 (2006).

 Id. at 221.

 See, e.g., Evans v. State, 117 Nev. 609, 634, 28 P.3d 498, 515 (2001).

 Cf. Haberstroh, 119 Nev. at 184, 69 P.3d at 683.

 Doleman v. State, 112 Nev. 843, 850, 921 P.2d 278, 282 (1996) (citing Mills v. Maryland, 486 U.S. 367, 374-82 (1988)).

 The latter statement contains a slight mistake that actually favored Rippo. Aggravating circumstances need not outweigh mitigating circumstances to impose a death sentence; rather, NRS 200.030(4)(a) provides in part that a defendant is eligible for death if “any mitigating circumstance or circumstances which are found do not outweigh the aggravating circumstance or circumstances.”

 Pellegrini v. State, 117 Nev. 860, 882, 34 P.3d 519, 534 (2001).

 Kirksey v. State, 112 Nev. 980, 987, 923 P.2d 1102, 1107 (1996).

 Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

 Strickland, 466 U.S. at 694; Riley v. State, 110 Nev. 638, 650 n.7, 878 P.2d 272, 280 n.7 (1994).

 Kirksey, 112 Nev. at 998, 923 P.2d at 1114.

 Strickland, 466 U.S. at 689.

 Pellegrini, 117 Nev. at 883, 34 P.3d at 534.

 NRS 178.602; Cordova v. State, 116 Nev. 664, 666, 6 P.3d 481, 482-83 (2000).

 116 Nev. 215, 233-36, 994 P.2d 700, 712-14 (2000).

 See Evans, 117 Nev. at 643, 28 P.3d at 521; Garner v. State, 116 Nev. 770, 787-89, 6 P.3d 1013, 1024-25 (2000), overruled in part on other grounds by Sharma v. State, 118 Nev. 648, 56 P.3d 868 (2002).

 Cf. Rhyne v. State, 118 Nev. 1, 11 & n.26, 38 P.3d 163, 170 & n.26 (2002) (holding that failure to object to exclusion of jurors as unconstitutional under Batson v. Kentucky, 476 U.S. 79 (1986), precludes raising the issue on appeal); Hanley v. State, 83 Nev. 461, 464, 434 P.2d 440, 442 (1967) (recognizing that failure to challenge jurors when grounds for disqualification are known results in waiver of the challenge).

 See Evans v. State, 112 Nev. 1172, 1186, 926 P.2d 265, 275 (1996).

 Duren v. Missouri, 439 U.S. 357, 364 (1979); see also Evans, 112 Nev. at 1186, 926 P.2d at 275.

 Facts alleged in Rippo’s opening brief are neither evidence nor part of the record. See Phillips v. State, 105 Nev. 631, 634, 782 P.2d 381, 383 (1989).