# IN THE SUPREME COURT OF THE STATE OF NEVADA

KIRSTIN BLAISE LOBATO,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 58913

FILED

NOV 23 2016

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

This is an appeal from a district court order denying a postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge. Appellant Kristin Blaise Lobato was convicted, pursuant to a jury verdict of manslaughter and sexual penetration of a dead human body. She filed a timely postconviction habeas petition, asserting 79 grounds for relief. On appeal, she raises all 79 grounds for relief and argues that the district court erred in rejecting them.

*Brady claims*

We first address Lobato's arguments that the district court erred in denying her claims that the State, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), failed to disclose evidence of a relationship between the victim and a Las Vegas law enforcement officer and information indicating that a detective testified falsely in regard to a SCOPE report he ran on a person of interest in connection with the victim's death. We conclude that the district court did not err because

16-36515

Lobato failed to demonstrate that the evidence was withheld by the State or that it was material, that is, that there was a reasonable probability that the evidence would have affected the outcome of trial. *See Mazzan v. Warden*, 116 Nev. 48, 67, 993 P.2d 25, 37 (2000) (reiterating that the three components to a successful *Brady* claim are "the evidence at issue is favorable to the accused; the evidence was withheld by the state, either intentionally or inadvertently; and prejudice ensued, i.e., the evidence was material"); *Jimenez v. State*, 112 Nev. 610, 619, 918 P.2d 687, 692 (1996) (stating the materiality standard where a defendant made no specific request for the evidence).

*Ineffective-assistance-of-counsel claims*

Next, we turn to Lobato's arguments that the district court erred in rejecting the more than 50 grounds for relief contained in her petition that are based on the alleged ineffective assistance of trial and appellate counsel. With respect to all of these claims, Lobato's opening brief on appeal consists essentially of single-sentence issue statements followed by an allegation that the district court erred in its application of the law. She provides no cogent argument applying the law to the stated issues and the relevant facts. In her effort to present all of her claims on appeal rather than focusing on the strongest ones, *see Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989) (reiterating Supreme Court's observation from *Jones v. Barnes*, 463 U.S. 745 (1983), that "appellate counsel is most effective when she does not raise every conceivable issue on appeal"), Lobato has shirked her "responsibility" as the appellant "to present relevant authority and cogent argument." *Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987); *see also* NRAP 28(a). As a result, with

the two exceptions discussed below, we will not address her claims that the district court erred in rejecting the grounds in her petition alleging that trial and appellate counsel provided ineffective assistance.

Read in conjunction with the arguments Lobato makes with respect to other grounds for relief, grounds 38 and 40 in the petition are sufficiently presented on appeal for our review. In those two grounds for relief, Lobato asserted that trial counsel should have retained and presented testimony from a forensic entomologist or forensic pathologist to narrow the time of the victim's death. To prove ineffective assistance of counsel, Lobato had to demonstrate both that counsel's performance was deficient and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88, 697 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Lobato was entitled to an evidentiary hearing on those ineffective-assistance claims only if she alleged specific facts that were not belied by the record and that, if true, would entitle her to relief. *Hargrove v. State*, 100 Nev. 498, 686 P.2d 222 (1984). The district court rejected grounds 38 and 40 in the petition because the decision as to what witnesses to call at trial was "ultimately the call of the lead trial counsel" and Lobato had not demonstrated prejudice. We conclude, however, that the district court resolved these claims prematurely without conducting an evidentiary hearing.

We first address the district court's conclusion on the deficiency prong of the ineffective-assistance test. The district court was correct that strategic decisions such as what evidence to present are up to counsel, and as a general matter, those decisions are virtually unchallengeable absent extraordinary circumstances. *Doleman v. State*,

112 Nev. 843, 848, 921 P.2d 278, 280-81 (1996). But the question of whether counsel's strategic decisions were deficient—that they fell below an objective standard of reasonableness—may be impacted by the reasonableness of counsel's investigation. *See id.; see also Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). The district court, however, made no findings as to the reasonableness of trial counsel's decision in light of the reasonableness of the investigation in this case. And, the record before this court does not belie Lobato's argument that counsel's performance with respect to the investigation into the victim's time of death was deficient. In particular, trial counsel pursued an alibi defense that made the victim's time of death a crucial aspect of the defense case. Given strong alibi evidence that Lobato was in Panaca, Nevada, at specific times on July 8, particularly in the middle of the day and early evening (which the State apparently conceded), the defense arguably needed to narrow the time of death as much as possible. Yet the only evidence presented at trial regarding time of death was the medical examiner's testimony, which evolved between the preliminary hearing and trial and suggested a time of death as early as 10 p.m. on July 7.[1] While there are

---

[1]The medical examiner testified at the preliminary hearing that the victim died within 24 hours of when the body was discovered at 10 p.m. on July 8 but later testified at trial that the victim died within 8 to 24 hours
*continued on next page . . .*

circumstances in which it will be not be objectively unreasonable for trial counsel to decline to retain an expert or to rely on cross-examination of a State's expert rather than investigating and retaining a defense expert, *see Harrington v. Richter*, 562 U.S. \_\_\_, 131 S. Ct. 770, 788-90 (2011), it is not clear at this point whether doing so in this case was objectively reasonable, particularly given pretrial correspondence between counsel that is included in the record and that suggests that budget constraints may have influenced counsel's decisions regarding the retention of experts, *cf. Hinton v. Alabama*, 571 U.S. \_\_\_, 134 S. Ct. 1081, 1088-89 (2014) (explaining that attorney's failure to seek an expert would constitute objectively unreasonable performance if attorney believed expert assistance was necessary but failed to hire an expert because of a mistaken belief that he could not obtain appropriate funds to do so). Thus, we are not convinced that the deficiency prong of the ineffective-assistance test could be resolved without an evidentiary hearing.

We nevertheless must address the district court's decision on the prejudice prong as well because an insufficient showing on that prong would obviate the need for an evidentiary hearing. *See Strickland*, 466 U.S. at 697. In support of her postconviction petition, Lobato submitted affidavits from three forensic entomologists who opined that the victim had to have died sometime after 8 p.m. on July 8 and from a forensic

---

*. . . continued*

of, and more likely within 12 to 18 hours before, the coroner's examination, which occurred at or after 3:50 a.m. on July 9.

pathologist who opined that the victim could not have been dead for more than a few hours before his body was discovered at 10 p.m. on July 8. This would have moved the time of death well into the timeframe when the State conceded that Lobato was in Panaca. Any evaluation of the prejudice prong also must take into consideration the totality of the evidence before the jury. *Id.* at 692. Because the jury received no physical evidence linking Lobato to the victim's murder, it seems likely that Lobato's statements to the detective and others had the greatest influence on the jury's verdict. Even considering those statements, however, we conclude that Lobato has made specific factual allegations that are not belied by the record and that, if true, suggest a reasonable probability that had counsel investigated and presented expert evidence that narrowed the time of death, the jury would have had a reasonable doubt as to Lobato's guilt.[2]

*Actual innocence/new evidence*

Finally, we address Lobato's arguments that the district court erred in rejecting her claims that new evidence demonstrates that she is actually innocent of the crimes for which she stands convicted (raised as

---

[2]The district court's conclusion on the prejudice prong may have been affected by its observations that the affidavits submitted in support of these and other claims had not been subjected to cross-examination. The affiants had not been subjected to cross-examination because the district court denied Lobato's request for an evidentiary hearing. Accordingly, the lack of cross-examination would not alone have been an appropriate reason to deny the petition where there had not been an evidentiary hearing.

grounds 1-24 and 78 in the petition). According to Lobato, the new evidence would, among other things: bolster her alibi defense based on expert testimony narrowing the time of death, testimony that Lobato had told people about the attack in Las Vegas before the victim was killed, and new alibi witnesses; demonstrate that someone other than Lobato killed the victim; and undermine the State's theory of the case, the credibility of key prosecution evidence and testimony, and the conclusions to be drawn from Lobato's pre-arrest statement to law enforcement. The district court rejected these claims for some or all of the following reasons: the evidence was not "newly discovered" because it was available before or during trial with reasonable diligence, the new evidence did not establish actual innocence, the claims are barred by the law-of-the-case doctrine based on arguments rejected by this court on direct appeal, and the claims were barred under NRS 34.810 because Lobato could have presented the new evidence in a timely motion for new trial under NRS 176.515 and she failed to demonstrate good cause for not pursuing such a motion.[3] We

_____

[3]This court has not determined whether NRS 34.810(1)(b)(1) applies to grounds that could have been raised in a motion for new trial under NRS 176.515. But even assuming it does, the district court's determination that most of Lobato's new-evidence/actual-innocence claims were barred by NRS 34.810(1)(b)(1) because they could have been raised in a timely motion for a new trial under NRS 176.515 is problematic for another reason. In particular, if the district court correctly determined that the evidence underlying Lobato's new-evidence/actual-innocence claims could have been discovered before trial with reasonable diligence, then that evidence could *not* have been raised in a motion for new trial under NRS 176.515 because a motion for new trial based on newly discovered evidence is limited to evidence that could not with reasonable

*continued on next page . . .*

conclude that further consideration of these claims is warranted and therefore reverse the district court's decision as to grounds 1-24 and 78 and remand for further proceedings as to those grounds for relief.

The parties and the district court failed to sufficiently consider whether the new-evidence/actual-innocence claims are cognizable in a postconviction habeas petition filed under NRS 34.724(1) and, if so, under what circumstances.[4] Despite Lobato's protestations to the contrary, her claims are freestanding claims of actual innocence based on new evidence because she asserted them as substantive grounds for relief, not as a gateway to obtain review of another substantive claim that otherwise would not be considered on the merits because of a procedural bar.[5] *See*

---

*. . . continued*
diligence have been discovered and produced for trial, *Sanborn v. State*, 107 Nev. 399, 406, 812 P.2d 1279, 1284 (1991).

[4]Lobato's claim in her reply brief that her petition was filed pursuant to NRS 34.360 is belied by the record before this court. On its face, Lobato's petition is designated as a postconviction petition for a writ of habeas corpus and was accordingly filed pursuant to NRS 34.720-34.830. But more to the point, NRS 34.724(2) provides that, other than a direct appeal from the judgment of conviction and "any remedies which are incident to the proceedings in the trial court," the postconviction petition "[c]omprehends and takes the place of all other common-law, statutory or other remedies which have been available for challenging the validity of the conviction or sentence, and must be used exclusively in place of them." NRS 34.724(2)(a), (b).

[5]In this respect, we note that this was Lobato's first, timely petition challenging her conviction and sentence. Accordingly, the procedural defaults in NRS 34.726 and NRS 34.810(2) are not implicated as to the petition or any of the claims therein.

Supreme Court
OF
Nevada

(O) 1947A

*generally Schlup v. Delo*, 513 U.S. 298, 313-15 (1995) (explaining difference between freestanding claim of actual innocence and gateway claim of actual innocence).

Substantive grounds for postconviction habeas relief in Nevada are limited to "claims that the conviction was obtained, or that the sentence was imposed, in violation of the Constitution of the United States or the Constitution or laws of this State." NRS 34.724(1). We have "yet to address whether and, if so, when a freestanding actual innocence claim exits" or the burden of proof as to and elements of a freestanding claim. *Berry v. State*, 131 Nev., Adv. Op. 96, 363 P.3d 1148, 1154 n.3 (2015); *accord McQuiggin v. Perkins*, 569 U.S. ___, ___, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). Although the parties touch on some of those issues on appeal, the legal and factual arguments were not fully developed on appeal or before the district court. Nor is there a consensus among other courts on these important issues. *See, e.g., DiMattina v. United States*, 949 F. Supp. 2d 387 (E.D.N.Y. 2013) (discussing lack of consensus among federal courts as to whether a freestanding actual innocence claim would be cognizable in a federal habeas proceeding and concluding that such claims should be cognizable); *People v. Washington*, 665 N.E. 2d 1330 (Ill. 1996) (holding that a freestanding claim of actual innocence is cognizable in state habeas petition because continued incarceration would violate principles of due process in state constitution and indicating that evidence must be newly discovered); *Montoya v. Ulibarri*, 163 P.3d 476 (N.M. 2007) (holding that a freestanding claim of actual innocence is cognizable as a matter of state

constitutional law but declining to limit claim to newly discovered evidence because "the focus of our inquiry is on actual innocence rather than when the evidence could have been discovered or procedural error" and noting that whether evidence is newly discovered will be relevant to whether evidence is reliable); *State v. Willis*, 58 N.E.3d 515 (Ohio Ct. App. 2016) (concluding that freestanding claim of actual innocence does not constitute s substantive ground for state postconviction relief because it does not demonstrate a constitutional violation in the proceedings that led to the conviction). Because the factual and legal arguments related to the new-evidence/actual-innocence claims require further development in the district court, we reverse the district court's judgment as to grounds 1-24 and 78 in the petition and remand for further proceedings.

For the reasons discussed, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Parraguirre

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Cherry

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A

cc: Department 2, Eighth Judicial District Court
J. Bediaku Afoh-Manin
Phung H. Jefferson
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk