# IN THE SUPREME COURT OF THE STATE OF NEVADA

HERBIE FREDRICK MOORE, JR.,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 78012

FILED

MAR 17 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is a pro se appeal from a district court order denying a postconviction petition for a writ of habeas corpus.[1] Eighth Judicial District Court, Clark County; Joseph T. Bonaventure, Senior Judge.

Appellant argues that the district court erred in denying his claims of ineffective assistance of counsel.[2] To prove ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*,

---

[1]Having considered the pro se brief filed by appellant, we conclude that a response is not necessary. NRAP 46A(c). This appeal therefore has been submitted for decision based on the pro se brief and the record. *See* NRAP 34(f)(3).

[2]We note that appellant's postconviction counsel withdrew claims 1, 2, 3, and 6 from consideration at the evidentiary hearing. Thus, these claims will not be considered on appeal.

20-10481

100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Both components of the inquiry must be shown, *Strickland*, 466 U.S. at 697, and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

Appellant claims that counsel did not investigate the white Ford Taurus and whether the bullet hole in the Taurus was there before the murder. Appellant did not demonstrate deficient performance or prejudice. L. Fradiue, the owner of the Taurus, testified at trial that she did not know when the damage happened, but that it occurred around the time of the shooting. Fradiue further testified that appellant borrowed her car the night of the shooting and changed his stories several times about how the damage occurred, including that the damage was inflicted by a hatchet or because he drove into a fence. Appellant did not show what a further investigation would have found. He further did not demonstrate a reasonable probability of a different outcome had trial counsel investigated the damage to the Taurus.

Appellant next claims that counsel should have investigated the 9-1-1 phone call to discover the caller's identity because the unknown caller described the shooter as wearing blue shorts and shirt unlike the black shorts and a white shirt described by other witnesses. Appellant did not demonstrate deficient performance because he has not demonstrated that a more thorough investigation would have led to the caller's identity.

The police themselves were not able to identify the caller. Appellant further did not demonstrate prejudice. The jury heard differing descriptions of the shooter's clothing; however, given the substantial evidence of guilt, including appellant's confession, eyewitness testimony, and the connection between appellant and the vehicle seen leaving the crime scene, appellant has not demonstrated a reasonable probability of a different outcome had trial counsel investigated the 9-1-1 caller's identity.

Appellant next claims that counsel should have called R. Huggins as a witness because he lived above the apartment where the murder took place, heard gun shots, and saw men leaving the apartment after the shooting. Appellant claims that Huggins' description of the men would not include appellant. Huggins also knew that the victim was known to brandish a weapon and threaten people. Appellant did not demonstrate deficient performance or prejudice. The district court found that Huggins would not have made a credible witness given his close relationship with appellant, the limited probative value of his testimony, and the inconsistencies in his various statements. Substantial evidence supports these findings. Trial counsel testified that he did not call Huggins as a witness because of credibility issues and concern about opening the door to a prior bad act.[3] During Huggins' interview with the police, he stated that

---

[3]Postconviction counsel never clarified what trial counsel's concern was regarding the prior bad act, and thus, he did not demonstrate that trial counsel's strategic decision not to call Huggins was deficient. *Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278, 280-81 (1996).

he woke up when he heard the shots and looked outside but did not see anybody. He later clarified during the same interview that he saw the two men who lived in the apartment next door to Huggins walk away as the police arrived. During this interview, Huggins never mentioned seeing a third man walk away from the crime scene. Then, at the evidentiary hearing, Huggins testified that he was awake when the shooting occurred and that he saw three men walking away from the crime scene area. Huggins identified one of the men as Brian Porter, the individual who now claims to be the shooter, and claimed that he saw him in the neighborhood with increasing frequency before the shooting. However, as postconviction counsel admitted at the evidentiary hearing, Huggins' testimony is inconsistent with Porter's testimony regarding how often Porter was in the neighborhood.[4] Under these circumstances and given the substantial evidence of guilt presented at trial as recounted above, appellant did not demonstrate a reasonable probability of a different outcome at trial had counsel called Huggins as a witness.[5]

---

[4]Porter testified that this was his first trip to Las Vegas and he only visited the neighborhood of the apartment complex that day after an alleged altercation with the victim. Huggins testified the man walking away by himself, whom he had identified as Porter, "was in the neighborhood all the time. . . . like I would see him a lot but I didn't know him."

[5]To the extent that appellant claimed that trial counsel was ineffective for relying on his investigator and not interviewing Huggins personally, appellant did not demonstrate that it was objectively unreasonable to rely upon a defense investigator and did not demonstrate that there was a reasonable probability of a different outcome had trial counsel personally interviewed Huggins.

Appellant next argues that cumulative deficiencies in trial counsel's performance warrant relief. Even if multiple instances of deficient performance may be cumulated for purposes of demonstrating prejudice, *see McConnell v. State*, 125 Nev. 243, 259 & n.17, 212 P.3d 307, 318 & n.17 (2009), appellant did not demonstrate any instances of deficient performance.

Finally, appellant claims that he was actually innocent because another person, Brian Porter, confessed to the crime. In a letter to appellant's former trial counsel, Porter stated the victim pulled a gun on him earlier the day of the shooting and described the apartment where the shooting took place and the circumstances of the shooting. Appellant notes that there was no forensic evidence linking him to the crime and that much of the evidence against him is based on W. Lockett's statements, someone with a motive to frame appellant for the crime, and Fradiue's testimony, which contained inconsistencies. Assuming that a freestanding claim of actual innocence could be raised in a postconviction petition for a writ of habeas corpus, *see Berry v. State*, 131 Nev. 957, 966 n.2, 967 n.3, 363 P.3d 1148, 1154 nn. 2, 3 (2015) (noting that it is not clear whether a free-standing claim of actual innocence may be raised in a postconviction petition for a writ of habeas corpus), the district court determined that appellant had not met the extraordinarily high standard of demonstrating actual innocence, *see id.* at 966, 363 P.3d at 1154 (recognizing that it is not clear what standard of proof would apply to a free-standing claim but that the standard for demonstrating actual innocence as a gateway claim requires a demonstration that it is more likely than not that no reasonable juror would have convicted the defendant in the light of the new evidence). The district

court considered Porter's letter, postconviction counsel's affidavit, and Porter's testimony at the evidentiary hearing, and found that Porter's story was not sufficiently credible. The district court specifically found that Porter gave inconsistent statements regarding unrelated facts, provided no corroboration that he was in Las Vegas on the day of the murder, only came forward after meeting appellant in prison, and was unclear about details regarding the murder, including the number of victims in the apartment, and the number of shots.[6] Porter's refusal to provide any details that would corroborate his story that he was in Las Vegas at the time of the shooting is very troubling. For example, as the district court noted, Porter has given various names for the friends he traveled with. Even when pressed at the evidentiary hearing, Porter would not provide their names so that his story of traveling to Las Vegas from New Orleans could be corroborated. Given the inconsistencies between Porter's testimony and letter, the lack of corroboration, appellant's confession to committing the crime, the testimony of the two female victims, and other evidence, including cell phone data placing appellant in the area of the crime scene, we conclude that substantial evidence supports the district court's findings. We therefore conclude that the district court did not err in denying the actual innocence claim. See State v. Rincon, 122 Nev. 1170, 1177, 147 P.3d 233, 238 (2006) (emphasizing that this court will not second-guess the district court's findings as to the credibility of witnesses and evidence when that court is

---

[6]We note that Porter was also inconsistent regarding whether the door to the apartment was open, cracked open, or closed during the shooting.

acting as the trier of fact because in those circumstances, "the district court is in the best position to adjudge the credibility of the witnesses and evidence"). Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Silver

cc:  Chief Judge, Eighth Judicial District Court
Eighth Judicial District Court, Dept. 6
Hon. Joseph T. Bonaventure, Senior Judge
Herbie Fredrick Moore, Jr.
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk