An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

SAMUEL HOWARD,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 57469

FILED

JUL 3 0 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a district court order denying a post-conviction petition for a writ of habeas corpus in a death penalty case. Eighth Judicial District Court, Clark County; Michael Villani, Judge.

On March 26, 1980, appellant Samuel Howard entered a Sears department store in Las Vegas and attempted to obtain a cash refund for a belt sander that he did not purchase. During an altercation resulting from his attempt, Howard pulled out a gun and threatened a security officer and two employees. He absconded with the security officer's wallet, radio, and badge. Later that day, after arranging a meeting with Dr. George Monahan to discuss the purchase of Dr. Monahan's van, Howard shot and killed him. A jury convicted him of two counts of robbery with the use of a deadly weapon and first-degree murder with the use of a deadly weapon and sentenced him to death for Dr. Monahan's murder. This court affirmed the convictions and death sentence on appeal. *Howard v. State*, 102 Nev. 572, 729 P.2d 1341 (1986).

After unsuccessfully seeking post-conviction relief on three occasions, Howard filed this fourth post-conviction petition for a writ of

SUPREME COURT
OF
NEVADA

(O) 1947A

14-24922

habeas corpus on October 25, 2007, and an amended petition on February 24, 2009. The State filed a motion to dismiss the petition. The district court denied the petition as procedurally barred. In this appeal, Howard argues that the district court erroneously denied his post-conviction petition on the grounds that: (1) the premeditation instruction given to the jury was constitutionally infirm because it failed to define deliberation as a distinct element of first-degree murder, (2) trial counsel were ineffective for not investigating and presenting mitigation evidence during the penalty hearing, and (3) he is actually innocent of the death penalty.

Because Howard filed his petition nearly 21 years after the remittitur issued on direct appeal and he had previously filed three other post-conviction petitions, the petition was untimely under NRS 34.726 and successive pursuant to NRS 34.810(2). The petition therefore was procedurally barred absent a demonstration of good cause and prejudice. NRS 34.726(1); NRS 34.810(3). When a petitioner cannot demonstrate good cause, the district court may nevertheless excuse a procedural bar if he demonstrates that failing to consider the petition would result in a fundamental miscarriage of justice. *Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001). A fundamental miscarriage of justice requires "a colorable showing" that the petitioner is "actually innocent of the crime or is ineligible for the death penalty." *Id.* To establish actual innocence of the death penalty, the petitioner "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him death eligible." *Id.*

The State pleaded laches pursuant to NRS 34.800. Under that provision, a petition may be dismissed if the delay in filing the petition

prejudices the State. NRS 34.800(1). A period exceeding five years between the judgment or a decision on direct appeal and the filing of a petition creates a rebuttable presumption of prejudice to the State. NRS 34.800(2). Howard cannot overcome the presumption of prejudice under NRS 34.800(1)(a) because the claims were previously available, and, as to the presumption of prejudice under NRS 34.800(1)(b), he has failed to demonstrate a fundamental miscarriage of justice.

*Premeditation instruction*

Howard argues that the premeditation instruction given to the jury was constitutionally infirm because it failed to define deliberation as a distinct element of first-degree murder. He acknowledges that he challenged the premeditation instruction in his third post-conviction petition but argues that this court should nevertheless revisit his claim, *see Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975), and that the procedural bars do not apply because this court's decision in *Nika v. State*, 124 Nev. 1272, 198 P.3d 839 (2008), changed the law.

The jury was instructed in accordance with what has become known as the *Kazalyn*[1] instruction. In *Byford v. State*, 116 Nev. 215, 233-37, 994 P.2d 700, 712-15 (2000), this court disapproved of the *Kazalyn* instruction and provided district courts with new instructions to use in the future. We concluded in *Nika*, 124 Nev. at 1287-89, 198 P.3d at 850-51, that *Byford* does not apply to cases that were final when it was decided. Howard's conviction was final 14 years before *Byford* was decided and

---

[1]*Kazalyn v. State*, 108 Nev. 67, 75, 825 P.2d 578, 583 (1992).

therefore *Byford* does not apply. Howard acknowledges *Nika* but argues that its reasoning is flawed because (1) it did not address the due process concerns raised by the Ninth Circuit Court of Appeals in *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007), regarding the *Kazalyn* instruction and (2) it overlooked constitutional concerns about the *Kazalyn* instruction. Neither ground warrants reconsideration of *Nika* nor any other relief because, as explained in *Nika*, this court is not bound by the *Polk* decision and Howard has not convinced us that the *Kazalyn* instruction is constitutionally infirm. Therefore, the district court did not err by denying this claim as procedurally barred.

*Ineffective assistance of counsel*

Howard argues that the district court erred by denying his claim that trial counsel were ineffective for not investigating and presenting mitigation evidence during the penalty hearing. In addition to his claim being procedurally barred under NRS 34.726(1) and NRS 34.810(1)(b)(2), his challenge is also barred by the law-of-the-case doctrine because we previously rejected his challenges to trial counsel's effectiveness in appeals from the denial of prior post-conviction petitions. Relying primarily on *Porter v. McCollum*, 558 U.S. 30 (2009), Howard argues that this court should revisit this claim because the law has changed and this court's previous decisions denying relief on his ineffective-assistance-of-counsel claim were wrong. We conclude that *Porter* does not provide good cause to overcome applicable procedural bars or justify a departure from the law-of-the-case doctrine and therefore the district court did not err by denying this claim. Howard's claim has two

components—counsel's alleged failure to investigate potential mitigation and counsel's failure to present mitigation.

As to the investigation aspect of Howard's claim, his reliance on *Porter* to justify revisiting this claim is flawed. In *Porter*, the Supreme Court held that an uncooperative client does not obviate counsel's obligation to conduct some sort of mitigation investigation. 558 U.S. at 40. Howard contends that, as in *Porter*, counsel's duty to investigate potential mitigation evidence was not obviated by his decision not to present mitigation evidence. *Porter*'s sentiments concerning counsel's duty to investigate mitigation despite obstacles to that investigation are not new. Long before its decision in *Porter*, the Supreme Court made clear that counsel has a duty to investigate. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) (acknowledging counsel's obligation to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" but that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions"); *see also Schriro v. Landrigan*, 550 U.S. 465, 478 (2007) (recognizing that the reasonableness of counsel's actions in investigating potential mitigation evidence is guided by a defendant's statements and actions); *Wiggins v. Smith*, 539 U.S. 510, 521-23 (2003) (recognizing counsel's duty to investigate). At most, *Porter* interjected another factor—an uncooperative client—to the determination of whether counsel's investigative efforts satisfied *Strickland*.

As to Howard's claim that *Porter* provides a basis to revisit his claim that counsel was ineffective for not presenting mitigation evidence, his argument is misplaced because *Porter* concerned a failure-to-

investigate allegation, not the failure to present mitigation evidence. And this court has recognized that a defendant may waive his right to present mitigating evidence and counsel's acquiescence to that waiver does not establish ineffective assistance of counsel. *Kirksey v. State*, 112 Nev. 980, 995-96, 923 P.2d 1102, 1112 (1996); *Riley v. State*, 110 Nev. 638, 651 n.8, 878 P.2d 272, 280 n.8 (1994). Here, Howard advised the trial court that he did not want counsel to present available mitigation evidence, and, after canvassing him on his decision, the trial court concluded that he understood the nature of mitigation evidence and its value to his case.

*Actual innocence*

Howard argues that he is actually innocent of the death penalty because (1) the mitigation evidence adduced at trial and during post-conviction proceedings establishes that he is actually innocent of the death penalty and (2) the two aggravating circumstances found—he was previously convicted of a felony involving the threat or use of force and the murder was committed during the perpetration of a robbery—are invalid. Actual innocence represents a "very narrow exception" to procedural default rules. *Sawyer v. Whitley*, 505 U.S. 333, 341 (1992). Therefore, actual innocence compels a showing of something more than the prejudice required for most constitutional errors—in this case, ineffective assistance of counsel. Otherwise, actual innocence merely supplants the cause and prejudice standard attendant to procedurally barred claims. *See id.* at 345 n.13 ("If a showing of actual innocence were reduced to actual prejudice, it would allow the evasion of the cause and prejudice standard which we have held also acts as an 'exception' to a defaulted, abusive, or successive claim" and "[i]n practical terms a petitioner would no longer have to show

cause, contrary to our prior cases"). And ascribing a broad application of the actual-innocence exception contravenes judicial interest in the finality of judgments by encouraging perpetual challenges of death sentences with each discovery of additional mitigation evidence. *See id.* at 338 (observing that procedural default jurisprudence is premised on, among other things, "concerns for the finality of state judgments of conviction"). For the following reasons, we conclude that the district court did not err by denying Howard's claim that he is actually innocent of the death penalty on any of the grounds he asserts.

### Mitigation evidence

Howard argues that new mitigation evidence establishes that he is actually innocent of the death penalty because had trial counsel presented it during the penalty hearing, the jury would not have found him death eligible. Even assuming that new mitigation evidence previously omitted due to constitutional error could provide the basis for an actual innocence claim, *but see id.* at 345-47, Howard must show by clear and convincing evidence that he is actually innocent of the death penalty, *Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001).

Howard presented a plethora of mitigation evidence, but the core elements of that evidence show the following: He grew up in a physically and emotionally abusive home in the 1950s amidst racism and segregation. Howard witnessed his alcoholic father beat his mother on several occasions and ultimately kill her and Howard's infant sister when Howard was three years old. After the deaths of his mother and sister and his father's incarceration, Howard lived with distant relatives for a few years but that household was abusive. At age 12, he was sent to the

Alabama Industrial School for Negro Children at Mt. Meigs. Children housed at Mt. Meigs were subjected to significant physical, sexual, and emotional abuse by the staff and other children. The school provided inadequate clothing and insufficient and unsanitary food. The children were forced to work in the school's vegetable and cotton fields, where they worked long hours under harsh conditions and were exposed to dangerous pesticides. The dormitories were dilapidated and overcrowded. After three years at Mt. Meigs, Howard was sent to live with his abusive father for a short time and thereafter lived with relatives in a poor, violent, and blighted neighborhood in the Bedford-Stuyvesant section of Brooklyn, New York, until he was nineteen and enlisted in the Marine Corps. He eventually deployed to Vietnam as a minesweeper and subsequently experienced significant stress and trauma from sweeping for mines and living under the constant threat of sniper fire. After returning from Vietnam, Howard's behavior became erratic, reckless, and aggressive, and he engaged in criminal activity and abused drugs. In the months preceding Dr. Monahan's murder, Howard's girlfriend noticed that his mental state had deteriorated significantly, and he experienced nightmares and violent mood swings. He also disappeared for days at a time. Howard attempted suicide while incarcerated in California and was sent to a mental institution for several months. In 2009, a psychologist issued a report concluding that he suffered from post-traumatic stress disorder (PTSD) as a result of his abusive childhood, especially his experience at Mt. Meigs, and combat experience in Vietnam. The psychologist also concluded that his exposure to toxic pesticides may have

exacerbated his already increased risk for violent behavior and his drug abuse, alcoholism, and suicide attempt were consistent with PTSD.

While the omitted mitigation evidence appears credible and constitutes evidence relevant to the sentencing decision, *see Lockett v. Ohio*, 438 U.S. 586, 602-03 (1978), the jury was exposed to some of these aspects of Howard's life. He testified that he volunteered to serve in the Marine Corps, suffering a head injury and exposure to Agent Orange while deployed to Vietnam. He described the negative effects of Agent Orange on his mental state—nervousness, aggressiveness, and violent tendencies. He testified that his father had killed his mother and sister when he was very young and that he had received psychiatric treatment at several hospitals during his lifetime, but he denied being mentally ill. He also testified that he had attempted suicide. Considering the new mitigation evidence, the circumstances of the murder, and the very narrow scope of the actual-innocence exception, we conclude that the new mitigation evidence does not rise to the level of clear and convincing and therefore does not establish that he is actually innocent of the death penalty.

Additionally, even assuming that the new mitigation evidence satisfied the actual-innocence exception, relief is unwarranted because Howard's ineffective-assistance claim lacked merit. He frustrated trial counsel's attempts to uncover mitigation evidence, and, while counsel is obligated to make reasonable decisions regarding investigative efforts, the reasonableness of counsel's actions "may be determined or substantially influenced by the defendant's own statements or actions." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). And, more significantly here,

Howard instructed counsel not to present mitigating evidence. A defendant may waive his right to present mitigating evidence, and counsel's acquiescence to that waiver does not establish ineffective assistance of counsel. *See Kirksey,* 112 Nev. at 995-96, 923 P.2d at 1112; *Riley,* 110 Nev. at 651 n.8, 878 P.2d 280 n.8.

*Aggravating circumstances*

*Prior violent felony*

Howard challenges the prior-violent-felony aggravating circumstance based on his 1979 New York robbery conviction on two grounds—(1) the State did not allege the robbery conviction in its notice of intent to seek the death penalty and (2) he was not convicted of the robbery. We conclude that Howard's claims lack merit. At the time of Howard's prosecution, SCR 250 did not exist and the prosecution was permitted to introduce evidence of aggravating circumstances, other than the aggravated nature of the crime itself, only if that evidence was disclosed to the defendant before the penalty hearing commenced. *See* 1977 Nev. Stat., ch. 585, § 7, at 1543. The record shows that before the jury heard evidence at the penalty hearing, a discussion ensued about the prior-violent-felony aggravating circumstance where the prosecution indicated that it intended to use the New York robbery conviction. We therefore conclude that he received adequate notice that the conviction would be used as an aggravating circumstance, but even so, any deficiency in the notice cannot establish actual innocence because it does not alter the evidence of the robbery conviction or the legal validity of the aggravating circumstance.

We also reject Howard's contention that he was not convicted of robbery. In this, he suggests that prior to the 1997 amendment to NRS 200.033(2)(b), the prosecution was required to prove a "conviction," as contemplated by NRS 200.033(2)(b), by establishing both the existence of and the entry of a final judgment. According to Howard, the 1997 amendment to the statute changed this "commonly understood" definition and that applying the new definition imposed by the amendment—"a person shall be deemed to have been convicted at the time the jury verdict of guilt is rendered or upon pronouncement of guilt by a judge or judges sitting without a jury"— to his case would violate the ex post facto clause and his due process rights. The legislative history indicates that the 1997 amendment was enacted to clarify confusion about temporal relationships between prior convictions and the penalty phase of capital prosecutions, not to redefine the meaning of "conviction" under the statute. *See* Legislature's Summary of Senate Bill 281, 69th Leg. (Nev. 1997) ("Senate Bill 281 clarifies certain provisions relating to circumstances aggravating first-degree murder. . . . In addition, a conviction for another murder that is not related to the immediate proceeding murder and that occurred at any time before the penalty hearing also constitutes an aggravating circumstance."); Hearing on S.B. 281 Before the Senate Comm. on Judiciary, 69th Leg. (Nev., June 18, 1997); Hearing on S.B. 281 Before the Assembly Comm. on Judiciary, 69th Leg. (Nev., July 1, 1997). In light of Howard's admission at trial that he sustained the conviction in absentia because he absconded during trial and other testimony and court documents indicating that he incurred a robbery conviction, we conclude that the State sufficiently proved the prior-violent-felony aggravating

circumstance based on robbery. *See Kirksey v. State*, 107 Nev. 499, 504, 814 P.2d 1008, 1011 (1991) (concluding that defendant's admission to prior conviction of robbery, copy of probation officer's report of crime, and copy of defendant's criminal history was sufficient to prove aggravating circumstance alleged pursuant to NRS 200.033(2)(b)).

*Felony based on robbery*

Howard argues that he is actually innocent of the death penalty because the felony aggravating circumstance based on his robbery of Dr. Monahan is invalid under *McConnell v. State*, 120 Nev. 1043, 1069, 102 P.3d 606, 624 (2004) (holding that it is "impermissible under the United States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder is predicated"). Because the jury was instructed on premeditated and felony murder and the verdict is silent as to which theory or theories the jury relied on in finding Howard guilty of murder, the felony aggravating circumstance is invalid. However, the prior-violent-felony aggravating circumstance based on his New York robbery conviction remains valid and when weighed against the mitigating evidence presented to the jury,[2] we conclude that the jury would have found

---

[2]Contrary to Howard's arguments, the reweighing analysis is limited to the trial record. *See Rippo v. State*, 122 Nev. 1086, 1093-94, 146 P.3d 279, 284 (2006); *Archanian v. State*, 122 Nev. 1019, 1040-41, 145 P.3d 1008, 1023 (2006); *Haberstroh v. State*, 119 Nev. 173, 184 n.23, 69 P.3d 676, 683 n.23 (2003) (emphasizing that this court's reweighing did not involve factual findings "other than those of the jury at the original penalty hearing"); *see also Bridges v. State*, 116 Nev. 752, 766, 6 P.3d 1000, 1010 (2000) (stating that this court "elected to explicitly reweigh the *continued on next page . . .*

Howard death eligible and imposed death. Therefore, he has not shown by clear and convincing evidence that he is actually innocent of the death penalty.

Having considered Howard's claims and concluded that they lack merit, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Gibbons

_____, J.                 _____, J.
Pickering                                           Hardesty

_____, J.                 _____, J.
Parraguirre                                       Douglas

_____, J.                 _____, J.
Cherry                                             Saitta

_____

. . . *continued*

aggravating and mitigating circumstances based upon our independent review of the trial record").

cc: Hon. Michael Villani, District Judge
Gordon Silver
Federal Defender Services of Idaho
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVAOA

(O) 1947A